Donald O'CONNOR, et al., Plaintiffs,

and

Benjamin M. Aban, Donald N. Adaniya, Rolando R. Alvarado, Joseph A. Alvitre, Larry Andrews, Jeannett Armstrong, Robert G. Ashmore, Lee E. Austin, David K. Bahl, Lawrence R. Barron, Kenneth R. Battle, Jeanette Binion, Royce Binion, Eleanor M. Bishop, Gaetane M. Boutin, Thomas R. Boyden, Deena J. Bradshaw, Shadrach Breaux, Stephen G. Broich, Michael C. Brown, Yulanda S. Brown, David S. Buchanan, Maria L. Buenrostro, Gail Burnett, William D. Byrd, Richard F. Camacho, Elaine L. Carr, Larry Carr, Ruby L. Carter, Daniel Castellano, Raymond Cervantes, Alyce Chacon, Joyce M. Chalenor, William Q. Chavira, Mary R. Clarett, Jacqueline V. Clayter, Janice L. Cobb, Paula Sue Conklin, Sandra G. Contreras, Lori A. Cook, Patricia A. Cormier, Osvaldo R. Cosme, John D. Cota, Jr., Scott A. Craddolph, Ronnie F. Crews, Joselito S. Cristobal, Sherron S. Cryer, Marjorie E. Cunningham, Elmito A. Danggoec, Gibson Nancy Darley, Valynda D. Davis, Claudia L. Dawkins,

---

Mark W. Day, David Martin De Los-Reyes, Firmo C. De Mesa, Carolyn De Ruso, Mary E. Dean, Daniel J. Devoy, Rita P. Dietrich, John A. Dimercurio, Marianito G. Domingo, Viola E. Eaton, John T. Elliott, June E. Erwin, Sharon Espinoza, Joan E. Farber, Richard G. Ferguson, Craig E. Finch, Olivia Flores, Anna J. Fontana, Carl R. Fontana, David Russell Ford, Kevin Foreman, Salvador Franco, Donald R. Freeman, Richard C. Fromm, Charles E. Fuller, Donato F. Garcia, Lydia Garcia–Espinoza, Jerry A. Gasbarra, Andrea S. Gilbert, Frank C. Giovenco, Gabriel Giraco, Carmen Y. Glass Lang, Alan J. Glassman, Ralph J. Gomez, Gay Gorski, Russell L. Gosselin, Leland A. Gotwals, Regina Goudeau, Timothy N. Graham, Melody A.Grant, Kathryn I. Gregor, Gordon C. Gregory, Victor A. Guerra, Eduardo Guirado, Mary L. Gunn, Victor Guzman, Douglas A. Hackett, Clara N. Hansen, Joan C. Harkins, Sharon Chaney Harris, Ingrid A. Harrison Meyerhofer, Luella L. Hartman, Edmore Hatcher, Dennis W. Hattan, Clifford L. Hawk, Barbara A. Hayes, Alice L. Heftye, Robert L. Henson, Sr., George Hernandez, Eric D. Hibbler, Talbert L. Hignight, Dwight E. Hill, Vivian Hill, Karen L. Hillblom, Ernest L. Hines, Barbara A. Holland, Antonius A. Holst, Mark J. Hopkins, Richard J. Huerta, Edward E. Huizar, Michael F. Humphrey, Eileen Hutchings, Pamela M. Iseri, Carole A. Jackson, Pamela A. Jarrett, Ronald D. Jensen, Odalie K. Johannessen, Judith A. John, Fred C. Johnson, David L. Johnson, Brian L. Jones, Altheria v. Jones, Ethelyn J. Jones, Charles L. King, John L. King, Edward S. Kirol, Stacey A. Koide, Jean K. Konnoff, Geza C. Koszty, Michael J. Kunza, Kenneth R. Kyle, Philip L. Lamontagne, Timothy D. Lane, Larry A. Latine, Phillip E. Lawson, Deirdre Anne Leary, James F. Lindekugel, Nelson Lugo, Teofilo M. Lugo, Laisene Malauulu, Gregory D. Marinas, Patrice A. Markham, Val S. Marquez, Richard D. McCaffery, Lance E. McNeil, Johnny McQueen, Jr., Anthony C. Metoyer, Jr., Troy J. Montgomery, Jong–Boon Moon, Don A. Morales, Donald F. Morgan, Barbara R. Murtagh, Albert W. Myers, Joyce C. Naeyaert, Mark D. Neumeister, Robert D. Nickens, Roque Nieto, Michael C. Nimtz, Sandra Lee Nunally, Yolanda Ontiveros–Duncan, Ronald L. Orr, Michael A. Paez, Kenneth F. Paffrath, Evelyn P. Palencia, Hugo A. Palomo, Roy H. Parker, III, Gary A. Patterson, Henry P. Perez, Robert A. Perez, Arthur R. Pimentel, Stanley H. Polinsky, Thomas H. Potter, Valerie B. Prather, John L. Quaderer, Lance D. Queen, Sandra A. Quintard, Timothy John Ramirez, Veda R. Ramsey, Linda Rau, Natividad Reyes, Jr., Frances A. Riedel, Edgar B. Roa, Angela K. Robbins, Roxie A. Roddy, Sharon L. Rodriguez, Joseph V. Rodriguez, Robert G. Rollings, Frank Romero, Richard M. Rosenthal, John G. Rossi, Ann Rubin, Vito Ruggiero, Ronald S. Sadora, Carlos E. Salazar, Priscilla B. Samson, Debra D. Sanchez, Robert Sanchez, Mark A. Sands, Jessie G. Santos, Ymelda Sasseen, William P. Shea, James E. Sheldon, Raymond J. Shipley, James N. Shows, Frank R. Silkwood, Deborah L. Sitlington, William H. Slaton, Charlotte C. Sluder, Gladys L. Snowden, Thomas I. Sorrels, Dennis E. Spain, Vivienne Steele, William H. Stephens, John W. Strandberg, Barry R. Stratton, Cathy D. Stratton, Belinda A. Sturz, Mick Suarez, Cindy J. Sulistio, Arturo L. Tabios, Jaime E. Tagle, George V. Taylor, John S. Telles, Dominic A.

Thomas, Mia P. Thompson, Betty A. Todd, Rebecca M. Upton, Maria Suzette Vaccaro, James T. Vanhorn, Dana P. Vanorman, Joan C. Vincent, Warren E. Voss, Lula M. Wall, Vincent K. Warren, Bobby Lee Washington, Stephanie Renee Washington, James A. Wathen, II, Irma Weaver, Francis E. Whalen, Jr., Elvira A. White, Mary A. Wicker, Walter Gene Wilkerson, Merle A. Wilkison, Brenda G. Williams, Ervin Williams, Jr., Greg F. Wolfslau, Robert C. Woolfork, Rodney A. Wright, and Stanley E. Zubas, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 02–5016.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 17, 2002.

See also 2002 WL 31319815.

Steven R. Hickman, Frasier, Frasier & Hickman, of Tulsa Oklahoma, argued for plaintiffs-appellants.

Kevin W. McArdle, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Todd M. Hughes, Assistant Director.

Before LOURIE, SCHALL, and PROST, Circuit Judges.

PROST, Circuit Judge.

Donald O'Connor, et al., (collectively "appellants") appeal from the decision of the United States Court of Federal Claims dismissing their complaint for lack of jurisdiction. *O'Connor v. United States,* 50 Fed.Cl. 285 (2001). Because the court erred in concluding that it lacked jurisdiction to hear the case, we reverse the court's dismissal. Because the court correctly granted, in the alternative, partial summary judgment in favor of the government on the ground of accord and satisfaction, we affirm that portion of its decision and remand for further proceedings.

## I. BACKGROUND

The relevant facts are not in dispute. Appellants are employees of the Defense Contract Management District of the West ("DCMDW" or "the agency"),[1] *id.* at 286, who seek compensation, liquidated damages, interest, attorney fees, and costs for overtime allegedly worked in violation of § 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (1994). Appellants are represented exclusively by the American Federation of Government Employees ("AFGE" or "the union"), local bargaining unit 2433 ("local 2433"), and certain terms of their employment are therefore governed by a collective bargaining agreement ("CBA") executed between the agency and the DCMDW Council of AFGE Locals, including local 2433. *Id.* at 287. Under § 7121(a)(1) of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7101 *et seq.* (2000), all such CBAs are

---

1. The DCMDW is a district of the Defense Contract Management Agency ("DCMA"), which was formerly the Defense Contract Management Command ("DCMC"). *O'Connor,* 50 Fed.Cl. at 287 n. 2. At the time of the events giving rise to this action, DCMA, and therefore DCMDW, was a part of the Defense Logistics Agency ("DLA"). *Id.* The two organizations were later separated. *Id.* This opinion refers to the DCMDW, the DCMA, and the DLA without distinction as "the agency."

required to include procedures "for the settlement of grievances." *Id.* § 7121(a)(1). With certain exceptions that do not apply here, the CSRA provides that these negotiated grievance procedures are to "be the exclusive *administrative* procedures for resolving grievances which fall within its coverage." *Id.* (emphasis added). The statute further states that "any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration." *Id.* § 7121(b)(1)(C)(iii). The CSRA explicitly defines "grievance" to include complaints "by any employee, labor organization, or agency concerning ... any claimed violation, misinterpretation, or misapplication of any law ... affecting conditions of employment." *Id.* § 7103(a)(9)(C)(ii). Although § 7121(c) of the statute excludes certain matters from the application of the grievance procedures, overtime claims under the FLSA are not among them. *See id.* § 7121(c).

As required by the CSRA, the CBA at issue here contains grievance procedures for the "prompt and equitable settlement of grievances between the parties" to the agreement. Consistent with the CSRA, the CBA defines "grievance" broadly to include complaints based upon "the interpretation or application of any law ... with respect to ... matters affecting conditions of employment." The CBA further provides that unless a matter is explicitly excluded from the application of the negotiated grievance procedures, these procedures are to be "the *exclusive* procedure available to bargaining unit employee(s) for the resolution of grievances." (emphasis added). Although the CSRA specifically permits a CBA to exclude any matter from the application of the grievance procedures that the negotiating parties see fit, *see id.* § 7121(a)(2), appellants' CBA does not list FLSA overtime claims in Article 36, Section 4, "Matters Excluded." Final-

ly, appellants' CBA states that if the local bargaining unit representative is not satisfied with the results of the grievance procedures, it may request that the matter be taken to arbitration. As required by the CSRA, the arbitrator's decision is to be binding upon the parties.

From 1997 through early 1999, eleven AFGE locals, including local 2433, filed substantively identical grievances against the agency alleging that it had violated the FLSA by failing to pay overtime to all bargaining unit members occupying positions at the GS-9 grade level and above. *See O'Connor,* 50 Fed.Cl. at 287. Section 207(a)(1) of the FLSA states, in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (2000). The FLSA further provides that an individual whose employer violates § 207 is entitled to the unpaid overtime wages, an additional equal amount as liquidated damages, attorney fees, and costs. *Id.* § 216(b). An employee may bring suit for a § 207 violation in any federal or state court of competent jurisdiction. *Id.*

On July 14, 1999, the parties entered into a global settlement agreement ("settlement agreement") resolving the eleven locals' overtime grievances against the agency. *O'Connor,* 50 Fed.Cl. at 288. As part of the settlement agreement, the agency agreed to pay the union $5,285,000 and other consideration to be disbursed to employees according to tabulations in three appendices to the agreement. *Id.*

This amount represented "all backpay, interest, liquidated damages and attorneys' fees and costs for the positions identified in Appendices A, B, and C incurred in the Union grievances up to the date that this Agreement is signed." The agency also consented to pay an additional $200 to each employee in the eleven union locals occupying a position designated in Appendix C of the settlement agreement. *Id.* In exchange for this payment, the parties agreed that no backpay, interest, or liquidated damages would accrue for the Appendix C employees from the date of settlement to nine months thereafter. *Id.* Finally, the settlement agreement stated that, with the exception of the provisions governing the disputed Appendix C positions, the union would not arbitrate the matters asserted in the FLSA grievances for the time periods covered by the grievances nor would it pursue individual employee claims to arbitration other than as elsewhere provided in the settlement agreement. *Id.*

Almost a year later, appellants filed a complaint in the Court of Federal Claims alleging that the agency had violated § 207 of the FLSA. *Id.* The court dismissed appellant's complaint on the ground that § 7121(a)(1) of the CSRA deprived the court of jurisdiction. *Id.* at 293. As stated above, § 7121(a)(1) provides that the negotiated grievance procedures contained in a CBA shall be, with certain exceptions, "the exclusive *administrative* procedures for resolving grievances that fall within [the CBA's] coverage." 5 U.S.C. § 7121(a)(1) (2000) (emphasis added). The word "administrative" was added to the statute by Congress in 1994, and it forms the heart of the jurisdictional debate in this case. Prior to the 1994 amendment, § 7121(a)(1) provides simply that a CBA's negotiated grievance procedures would be "the exclusive *procedures* for resolving grievances which fall within [a CBA's cov-

erage]." 5 U.S.C. § 7121(a)(1) (1988) (emphasis added). In *Carter v. Gibbs*, 909 F.2d 1452, 1454 (Fed.Cir.1990) (en banc), this court interpreted unamended § 7121(a)(1) to foreclose judicial remedies for employee grievances covered by a CBA.

In the instant case, the Court of Federal Claims held that Congress's addition of the word "administrative" to § 7121(a)(1) did not overrule *Carter* and thus does not allow federal employees to bring an action in court when their grievances are subject to the negotiated procedures contained in a CBA. *See O'Connor*, 50 Fed.Cl. at 293. Because the court found no reported legislative history to illuminate Congress's intent in adding the term "administrative," the court turned to the plain meaning of the word. *Id.* at 290. Although the court concluded that this plain meaning "must govern," *id.*, it declined to construe § 7121(a)(1) accordingly, *id.* at 291. As the court stated, it could not "agree that obeisance to the dictionary definition of the word 'administrative' to the exclusion of other considerations justifies departure from a legislative scheme grounded on the premise that collectively bargained grievance procedures are the preferred method of dispute resolution for unionized federal employees." *Id.* Instead, the court undertook a broader approach to statutory interpretation, concluding that the appellants' interpretation would be contrary to the CSRA's overall purpose of limiting judicial remedies in favor of bargained—for grievance procedures such as arbitration. *See Id.* at 292–93 (stating that the appellants' interpretation "would turn the established statutory scheme . . . on its head").

The court went on, assuming *arguendo* that it possessed jurisdiction, to determine that the settlement agreement constituted an accord and satisfaction of the appellants' FLSA claims. *Id.* at 239. The court

found that appellants had not raised a genuine issue of material fact that any of the elements of common law accord and satisfaction had not been satisfied. *Id.* at 294. Appellants argued that local 2433 was not a competent party to represent them in the agreement, citing *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (holding that an employee cannot waive his FLSA rights) and *Lynn's Food Stores v. United States,* 679 F.2d 1350 (11th Cir.1982) (holding that settlement of an FLSA claim must be approved by either a court or the Department of Labor). The court rejected this argument, however, on the ground that those cases were not applicable to federal employees under the CSRA. *See O'Connor,* 50 Fed.Cl. at 294.

Appellants appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A.

■ The Court of Federal Claims' decision to grant the government's motion to dismiss for lack of jurisdiction is a matter of law, which this court reviews *de novo. See Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992). The underlying issue, a question of statutory interpretation, is also subject to *de novo* review on appeal. *See Strickland v. U.S.,* 199 F.3d 1310, 1313 (Fed.Cir.1999).

Appellants submit that the Court of Federal Claims erred when it held that § 7121(a)(1) deprived it of jurisdiction of appellants' claims. According to appellants, both the plain language and the legislative history of the statute indicate that Congress intended to overrule *Carter* by adding the word "administrative" to § 7121(a)(1) and that the availability of administrative redress under their CBA's negotiated grievance procedures therefore does not restrict their right to pursue a judicial remedy in court. The government responds that the Court of Federal Claims properly dismissed appellants' claims for lack of jurisdiction because the addition of the word "administrative" did not affect the continuing applicability of *Carter* to appellants' case. The government argues that the structure of the statute, the remedial scheme established by § 7121, and the central purposes of the CSRA all counsel against reading the 1994 amendment to § 7121(a)(1) as allowing federal employees to press their grievances in court when they could seek an administrative remedy under their CBA's negotiated procedures.

■ Our holding in *Mudge v. United States,* 308 F.3d 1220 (Fed.Cir.2002) ("*Mudge*"), decided by this court concurrently with *O'Connor,* is dispositive of this issue. In *Mudge,* we hold that Congress's addition of the word "administrative" to the phrase "exclusive procedures" in § 7121(a)(1) effectively overruled *Carter* by allowing a federal employee to seek judicial relief for grievances subject to the negotiated procedures contained in a CBA. *See id.* at 1225–27. Relying on the ordinarily understood meaning of "administrative" as distinct from "judicial," *Mudge* concluded that "[t]he plain language of § 7121(a)(1) as amended is therefore clear: while § 7121(a)(1) limits the administrative resolution of a federal employee's grievances to the negotiated procedures set forth in his or her CBA, the text of the statute does not restrict an employee's right to seek a judicial remedy for such grievances." *Id.* at 1227–28. In so holding, this court rejected the Court of Federal Claims' reasoning that the broader policies underlying the CSRA required it to construe the word "administrative" contrary to this plain meaning. *See id.* at 1230–31. Accordingly, *Mudge* holds that the Court of Federal Claims in that case

erred when it dismissed appellant's claim for lack of jurisdiction on the ground that that claim was subject to the negotiated grievance procedures contained in a CBA between Mr. Mudge's federal employer and his union. In line with the reasoning set forth in *Mudge*, we hold that the Court of Federal Claims erred in the instant case when it found that it lacked jurisdiction of appellants' claims.

### B.

■ We review *de novo* the court's grant, in the alternative, of partial summary judgment in the government's favor on the issue of accord and satisfaction. *See Glass v. United States*, 258 F.3d 1349, 1353 (Fed.Cir.2001). Summary judgment is appropriate if no genuine question of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of a genuine question of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the court must view all evidence in the light most favorable to the non-movant, resolving all doubts in that party's favor, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505.

■ "A claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" *Case, Inc. v. United States*, 88 F.3d 1004, 1011 n. 7 (Fed.Cir.1996) (quoting *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1581 (Fed.Cir.1993) (citing *Brock & Blevins Co. v. United States*, 170 Ct.Cl. 52, 343 F.2d 951, 955

(1965))). A valid accord and satisfaction requires four elements: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration. *See Brock & Blevins Co.*, 343 F.2d at 955. In its most common form, an accord and satisfaction exists as "a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute." *Nev. Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73, 76 (10th Cir.1949).

On appeal, appellants concede that the settlement agreement between the agency and the eleven AFGE locals, including local 2433, satisfies the four requirements of an accord and satisfaction. Relying on the Supreme Court's decision in *Brooklyn Savings Bank*, however, they argue that the doctrine of accord and satisfaction does not apply to claims brought under the FLSA and that the Court of Federal Claims therefore erred in holding that the doctrine barred appellants' action. Appellants also cite the Eleventh Circuit's decision in *Lynn's Food Stores* for the proposition that employees cannot settle back wage claims arising under the FLSA without the supervision of either the Department of Labor ("DOL") or a court in the context of a stipulated judgment. Because the instant settlement agreement lacked such oversight, appellants assert that the settlement cannot compromise their FLSA claims or their right to pursue those claims in court. Finally, appellants argue that even if the settlement agreement constitutes a valid accord and satisfaction, it is binding only upon the union and not upon the individual employees whom the union represents.

The government responds that the settlement agreement satisfied the four elements required for a valid accord and sat-

isfaction and that the Court of Claims' grant of partial summary judgment was therefore correct. The government argues that appellants' reliance on *Brooklyn Savings* and *Lynn's Food Stores* is misplaced because those were private sector cases that consequently did not address the compromise of a federal employee's FLSA rights under the CSRA. According to the government, the CSRA authorized the local bargaining unit representatives to release their members' FLSA claims by first defining the term "grievance" sufficiently broadly to encompass those claims and then providing for the settlement of such grievances by the locals. The government therefore asserts that the agreement not to arbitrate contained in the settlement agreement between local 2433 and the agency precludes appellants from pursuing their FLSA claims in court.

■ We conclude that the parties' settlement agreement constitutes a valid accord and satisfaction, and we therefore affirm the court's decision granting partial summary judgment in the government's favor on the issue. As a preliminary matter, appellants' argument that any accord and satisfaction is binding only upon the union and not upon the individual employees lacks merit. Appellants do not contest that local 2433 is their exclusive bargaining unit representative. *See O'Connor*, 50 Fed.Cl. at 287. Under § 7114 of the CSRA, local 2433 therefore "represents and is entitled to act for" appellants. 5 U.S.C. § 7114(a)(1) (2000). Section 7121(b)(1)(C)(i) of the CSRA further provides that local 2433 has the right "in its

own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances." *Id.* § 7121(b)(1)(C)(i). Appellants' CBA also asserts this right, stating that "[t]he DLA Council or its local affiliates has the right to act in its behalf or on the behalf of any employee(s) to present and process grievances." Pursuant to the grievance procedure set forth in the CBA, the union acted on behalf of appellants to settle their FLSA claims. Appellants are therefore bound.

We are similarly unconvinced by appellants' reliance on *Brooklyn Savings*. In *Brooklyn Savings*, the Supreme Court held that a private employee could not waive or release his FLSA rights to liquidated damages. *See Brooklyn Sav.*, 324 U.S. at 704, 713, 65 S.Ct. 895. The Court therefore concluded that respondents, who had both signed agreements releasing their FLSA claims against their employers, were not precluded from bringing suit to recover the remainder of the overtime wages and liquidated damages owed them under the statute.[2] *Id.* at 716, 65 S.Ct. 895. In so holding, the Court relied heavily on what it saw as the purpose behind the FLSA:

> The [FLSA] was a recognition of the fact that due to the *unequal bargaining power as between employer and employee*, certain segments of the population required federal compulsory legislation to prevent *private contracts* on their part which endangered national health and efficiency and as a result the free movement of goods in interstate com-

---

**2.** *Brooklyn Savings* dealt with three cases, all of which raised similar questions relating to the interpretation of § 216(b) of the FLSA. *See* 324 U.S. at 699, 65 S.Ct. 895. In two of the cases, respondents executed written releases of their FLSA rights in exchange for a portion of the amount due them under the statute but subsequently brought suit seeking the remainder of the wages and damages owed, *id.* at 700–02, 65 S.Ct. 895; the third case concerned an employee's right to receive interest on § 216(b) minimum wages and liquidated damages, *id.* at 714. This opinion refers only to that portion of *Brooklyn Savings* addressing the first two cases.

merce. To accomplish this purpose standards of minimum wages and maximum hours were provided.... No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that *the same policy considerations* which forbid waiver of basic minimum and overtime wages under the Act also *prohibit waiver of the employee's right to liquidated damages.*

*Id.* at 706–07, 65 S.Ct. 895 (emphases added). In other words, the Court specifically grounded the decision in *Brooklyn Savings* in the FLSA's policy concerns: protecting individual employees from the potentially harmful effects of their unequal bargaining stance in relation to private employers. As the Court stated, "the same policy which forbids employee waivers of the minimum statutory rate because of inequality of bargaining power, prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver of liquidated damage is called for." *Id.* at 708, 65 S.Ct. 895. *See also Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." (citing *Brooklyn Sav.,* 324 U.S. at 707, 65 S.Ct. 895)).

Notably, *Brooklyn Savings* did not address the question of whether an employee's rights under § 216(b) of the FLSA could be the subject of a valid accord and satisfaction. Unlike the instant case, none of the three cases considered in *Brooklyn*

*Savings* involved a settlement executed between an employer and employee as the result of a bona fide dispute as to the coverage of the FLSA.[3] Instead, the Court specifically left open the question of the validity of such a settlement. *See Brooklyn Sav.,* 324 U.S. at 714, 65 S.Ct. 895. In *Schulte v. Gangi,* 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946), however, the Court resolved this question in the negative. Relying on the same policy concerns that had guided the Court's decision in *Brooklyn Savings, Schulte* held that a private employee could not bargain away his right to liquidated damages under the FLSA as part of a bona fide settlement of a dispute concerning coverage. *See id.* at 114, 66 S.Ct. 925. As the Court stated, "[w]e think that the purpose of the Act, which we repeat from the [*Brooklyn Savings* ] case was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." *Id.* at 116, 66 S.Ct. 925.

*Brooklyn Savings* and *Schulte* therefore stand for the principle that a private sector employee cannot waive or release his right to back wage compensation and liquidated damages under the FLSA. They are inapposite to the instant case, however, which presents the question of whether a federal employee who, pursuant to the CSRA, is represented exclusively by a union and subject to a CBA, may legitimately relinquish his or her FLSA rights as part of an accord and satisfaction. As the Supreme Court has held, private sector law is not controlling in the context of federal labor controversies. *See Karahalios v. Nat'l*

---

**3.** We note that there is some ambiguity in the record as to whether the dispute between appellants and the agency concerns the legal question of FLSA coverage or the factual issue of the amount of compensation and damages allegedly owed. As this question is not essential to our disposition of the case, however, we do not address it further.

*Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 535, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) ("[F]ederal employment does not rest on contract in the private sector sense."); *see also Carter*, 909 F.2d at 1457 (holding that federal employees' reliance on private sector cases was misplaced); *O'Connell v. Hove*, 22 F.3d 463, 471 (2d Cir.1994) ("[W]e agree with the Federal Circuit, that [federal employees'] 'reliance on [these cases], all dealing with private sector labor disputes, is misplaced.'" (citing *Carter*, 909 F.2d at 1457)). Moreover, neither *Brooklyn Savings* nor *Schulte* involved the CSRA or any other similar comprehensive statute addressing labor-management relations. Indeed, both cases explicitly anchored their holdings in what the Court perceived as the congressional intent behind the FLSA, namely to protect private employees from the harmful effects of unequal bargaining power. *See Brooklyn Sav.*, 324 U.S. at 706, 65 S.Ct. 895; *Schulte*, 328 U.S. at 116, 66 S.Ct. 925. Such inequality is not a factor here, because it was precisely this disparity in bargaining power that Congress sought to rectify through passage of the CSRA. *See* 5 U.S.C. § 7101(a), "Findings and purposes" ("[T]he statutory protection of the right of employees to organize, bargain collectively, and participate through labor organization of their own choosing in decisions which affect them (A) safeguards the public interest."). Accordingly, neither *Brooklyn Savings* nor *Schulte* stands for the principle that the doctrine of accord and satisfaction is inapplicable to appellants' FLSA claims.

Nor does the Eleventh Circuit's holding in *Lynn's Food Stores* lead us to conclude that appellants' settlement agreement did not constitute a valid accord and satisfaction. In that case, the DOL found that Lynn's Food, a private sector employer, had violated the FLSA's minimum wage and overtime provisions and that it was therefore liable to its employees for back wages and liquidated damages. *See Lynn's Food Stores*, 679 F.2d at 1352. After Lynn's Food's attempts to negotiate a settlement with the DOL failed, Lynn's Food approached its employees directly, offering them $1,000 collectively in exchange for their release of all claims for compensation arising under the FLSA. *Id.* Fourteen Lynn's Food employees signed the agreement, and Lynn's Food subsequently sought judicial approval of the settlement in district court. *Id.* The district court dismissed Lynn's Food's action on the ground that the settlements violated the provisions and policies of the FLSA, and the Eleventh Circuit affirmed. *Id.* The court held that although waivers of FLSA rights are generally invalid in the private sector, § 216 of the statute permits an employee to waive his FLSA rights in two specific ways. *Id.* First, under § 216(c) of the statute, such an employee may waive his right to FLSA compensation by accepting payment of unpaid wages owing him if that payment is made under the supervision of the Secretary of Labor and if the back wages are paid in full. *Id.* at 1353. In these circumstances, the employee will subsequently be precluded from bringing suit for liquidated damages. *Id.* Second, an employee may compromise his FLSA claims by bringing suit directly against a private employer under § 216(b) of the statute. *Id.* In this case, the district court may enter a stipulated judgment after ensuring that the settlement is fair. *Id.*

Significantly, the Eleventh Circuit relied upon both the language of the FLSA and the policy considerations underlying the Supreme Court's decision in *Brooklyn Savings* and *Schulte* in affirming the district court. "Recognizing that there are often great inequalities in bargaining power between employers and employees,

Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Id.* at 1352 (citing *Brooklyn Sav.*, 324 U.S. at 697, 65 S.Ct. 895). In the Eleventh Circuit's view, the facts presented by *Lynn's Food Stores* provided a clear illustration of the harm that could befall employees as a result of unequal bargaining power. *See Lynn's Food Stores*, 679 F.2d at 1354. Seemingly unaware of the DOL's determination that Lynn's Food owed them over $10,000 in back wages, *id.*, the employees agreed to release their claims in exchange for a prorated share of $1,000, *id.* at 1352. Some of these employees did not speak English. *Id.* at 1354. Additionally, a transcript of the settlement proceedings revealed that Lynn's Food's representative repeatedly suggested that the employees were not entitled to any back wages and that only malcontents would accept the sums owed them under the FLSA. *Id.* When certain employees indicated that they had been paid unfairly, the representative replied that they were not there to debate the merits of such claims. *Id.*

As discussed above, private sector law is not dispositive of federal labor disputes. And as discussed above, the policy concerns driving the court's decision in *Lynn's Food Stores* are not present in the context of a settlement agreement negotiated pursuant to the CSRA and a CBA. To the contrary, the CSRA encourages federal employees to participate in labor unions in order to avoid exactly the sort of unjust arrangements experienced by Lynn's Food's employees by attaining an equal bargaining position vis-à-vis their employers. Moreover, appellants direct our attention to nothing in the case law or the relevant statutes suggesting that settlement agreements executed between federal employees and their employers pursuant to the CSRA and an applicable CBA are subject to the same supervisory requirements as are settlement agreements in the private sector.

In *Carter*, this court held that "[u]nder the CSRA ... the rights of a unionized federal employee are consolidated within the four corners of the collective agreement." *Carter*, 909 F.2d at 1457. With the 1994 amendments to the CSRA, however, Congress expanded the scope of such an employee's rights. By providing that the negotiated grievance procedures established in a CBA are to be "the exclusive *administrative* procedures" as opposed to the "exclusive procedures for resolving grievances which fall within its coverage," 5 U.S.C. § 7121(a)(1) (2000), these amendments allowed federal employees to seek redress of their grievances in court and therefore outside the corners of their collective agreement. *See Mudge*, at 1224–25. Nothing in the 1994 amendments altered the breadth of federal employees' right to administrative grievance relief, however, such administrative rights therefore remain consolidated within the terms of their CBA. Because appellants' CBA specifically authorizes local 2433 to "present and process" grievances on behalf of its members, and because nothing in the CBA establishes DOL or judicial supervision as a requirement of settlement, we conclude that the absence of such supervision does not preclude appellants' settlement agreement from constituting a valid accord and satisfaction.

## CONCLUSION

The court erred in dismissing the appellants' complaint for lack of jurisdiction; we therefore reverse the court's dismissal. However, we affirm the court's grant of partial summary judgment in favor of the government on the ground of accord and satisfaction. Accordingly, we

*REVERSE–IN–PART, AFFIRM–IN–PART, and REMAND.*

No costs.