Robert O. **MUDGE, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–5024.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 17, 2002.

Larry J. Adkins, Deputy General Counsel, National Treasury Employees Union, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Gregory O'Duden, General Counsel; and Barbara A. Atkin, Deputy General Counsel.

Thomas B. Fatouros, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Todd M. Hughes, Assistant Director.

Before LOURIE, SCHALL, and PROST, Circuit Judges.

PROST, Circuit Judge.

Robert O. Mudge appeals from the decision of the United States Court of Federal Claims dismissing his complaint for lack of jurisdiction. *Mudge v. United States,* 50 Fed.Cl. 500 (2001). Because the court erred in concluding that it lacked jurisdiction to hear the case, we reverse the court's dismissal and remand for further proceedings. Because the court did not address the issue of whether the terms of Mr. Mudge's collective bargaining agreement ("CBA") independently deprived it of jurisdiction, we do not resolve that question on appeal.

## I. BACKGROUND

Mr. Mudge was employed as a maintenance mechanic by the Federal Aviation Administration ("FAA"). *Id.* at 501. He was also a member of the Professional Airways Systems Specialists trade union ("union"), and the terms of his employment were consequently governed in part by a CBA between the union and the FAA. *Id.* at 502. Mr. Mudge's claim stems from his work transfers between Nevada and Alaska. Initially, Mr. Mudge was stationed in Reno, Nevada, but he voluntarily transferred to King Station, Alaska, in January 1990, working there until March 1992, at which time he returned to Reno, where he worked until his retirement in December 1995. *Id.* at 501–02. Mr. Mudge filed a grievance under the CBA, claiming entitlement to back pay on two grounds. *Id.* at 502. First, he sought a 12% pay differential for the time he worked in Alaska to account for the higher cost of living in that state. *Id.* Second, he sought pay retention for the time he worked in Nevada after having worked in Alaska, arguing that the FAA had wrongly reduced his pay upon his return to Nevada. *Id.* The union elected not to pursue Mr. Mudge's pay retention claim and proceeded instead with only his pay differential claim pursuant to the negotiated grievance procedures set forth in the CBA. *Id.* The FAA rejected that claim, however, and the union chose not to

instigate arbitration.[1] *Id.* Dissatisfied with this result, Mr. Mudge sought relief from the General Accounting Office ("GAO") and the Merit Systems Protection Board ("MSPB"). *Id.* Both the GAO and the MSPB rejected Mr. Mudge's claim, however, finding that they lacked authority to hear his case. *Id.* Mr. Mudge subsequently filed his pay differential claim in the Court of Federal Claims. *Id.*

The court dismissed Mudge's complaint on the ground that 5 U.S.C. § 7121(a)(1), which is part of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7101 *et seq.* (2000), deprived the court of jurisdiction. That statutory paragraph and the subsequent paragraph read as follows:

> (a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive *administrative* procedures for resolving grievances which fall within its coverage.
>
> (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (2000) (emphasis added).

1. Under § 7121(b)(1)(C)(iii) of the CSRA, arbitration may be invoked by either an employee's exclusive representative, in this case the union, or the agency. *See* 5 U.S.C. § 7121(b)(1)(C)(iii) (2000). Similarly, Article 5, Section 8 of Mr. Mudge's CBA authorizes the union, rather than the individual employee, to take a matter to arbitration.

2. 5 U.S.C. § 7121(c) provides that subsections (a) and (b) do not apply to grievances concerning:

It is undisputed that Mr. Mudge's pay differential claim constitutes a "grievance" within the meaning of the statute and that his CBA does not exclude such grievances from the application of the negotiated procedures under § 7121(a)(2). Similarly, neither party asserts that Mr. Mudge's claim is exempted from those procedures under § 7121(d), (e), or (g), which allow a federal employee to resolve certain types of grievances through either negotiated procedures or alternative administrative, and sometimes judicial, procedures. *See id.* § 7121(d) (giving federal employees affected by a prohibited personnel practice under 5 U.S.C. § 2302(b)(1) the choice of proceeding under either negotiated or statutory procedures); § 7121(e) (giving federal employees affected by employment actions covered under 5 U.S.C. § 4303 or § 7512 the choice of proceeding under either negotiated or appellate procedures); § 7121(g) (giving "whistleblowers" the choice of proceeding under either negotiated procedures or certain administrative procedures enumerated therein). The only other exception to § 7121(a)'s exclusivity provision, subsection (c), is also inapplicable.[2] As a result, the heart of the dispute-whether the Court of Federal Claims has jurisdiction over a claim that falls within the scope of the negotiated grievance procedures-centers, as it did below, on the meaning of the term "administrative" in § 7121(a)(1).

(1) [A]ny claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);
(2) retirement, life insurance, or health insurance;
(3) a suspension or removal under section 7532 of this title;
(4) any examination, certification, or appointment; or
(5) the classification of any position which does not result in the reduction in grade or pay of an employee.

5 U.S.C. § 7121(c) (2000).

Prior to 1994, the statute did not contain the term "administrative." Rather, § 7121(a)(1) stated that the grievance procedures set forth in a CBA would "be the *exclusive procedures* for resolving grievances which f[ell] within its coverage." 5 U.S.C. § 7121(a)(1) (1988) (emphasis added). In *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir.1990) (en banc), *cert. denied, Carter v. Goldberg*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), this court interpreted the pre–1994 language to preclude federal employees from resolving grievances covered by their CBA in court. Relying on the "unambiguous" text of unamended § 7121(a)(1), which stated that "the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage," *Carter* held that the statute limited the resolution of such grievances to the negotiated procedures set forth in an employee's CBA. *Carter*, 909 F.2d at 1454. Like Mr. Mudge, the appellants in *Carter* did not contest that their claims, pay disputes under the Fair Labor Standards Act ("FLSA"), constituted "grievances" subject to the negotiated procedures. *Id.* Nor did they argue that subsections (a)(2), (c), (d), or (e) removed their claims from the application of those procedures. *Id.* at 1454–55. Instead, appellants argued that they were exempt from § 7121(a)(1)'s exclusivity provision because to hold otherwise would allow the CSRA to implicitly repeal their right to sue under the FLSA. *See id.* at 1454. In other words, appellants urged this court to read an additional exception into § 7121(a)(1), one that would allow them to bring their FLSA claims in court despite the availability of administrative redress under their CBA's negotiated grievance procedures. *See id.* at 1455. Heeding "the Supreme Court's admonition to leave the architecture of the federal personnel system to Congress," we declined to do so. *Id.* at 1456 (quoting *Volk*

*v. Hobson*, 866 F.2d 1398, 1403 (Fed.Cir. 1989)).

In 1994, Congress amended the CSRA by adding subsection (g) to § 7121. United States Office of Special Counsel, Merit Systems Protection Board: Authorization, Pub.L. No. 103–424, § 9(b), 108 Stat. 4361 (1994) (codified in scattered sections of 5 U.S.C. and 12 U.S.C.). This subsection gives "whistleblowers" the choice of resolving their employment grievances through either the negotiated procedures contained in their CBA or through certain administrative avenues enumerated in § 7121(g). *See* 5 U.S.C. § 7121(g) (2000). Concurrent with the creation of subsection (g), Congress made two changes to subsection (a)(1). First, Congress amended § 7121(a)(1) to refer to subsection (g). Pub.L. No. 103–424, § 9(c), 108 Stat. 4361 (1994). As such, § 7121(a)(1)'s exclusivity provision now applies "[e]xcept as provided in subsections (d), (e), *and (g)*." 5 U.S.C. § 7121(a)(1) (2000) (emphasis added). Second, and critically, Congress added the contested term "administrative" to § 7121(a)(1). Pub.L. No. 103–424, § 9(c), 108 Stat. 4361 (1994). In other words, it added the term "administrative" to the phrase "shall be the exclusive procedures for resolving grievances" previously construed in *Carter*. Congress styled both of these changes to § 7121(a)(1) as "Technical and Conforming Amendments." *Id.*

Nothing else in the direct legislative history of the 1994 amendments informs the meaning of the term "administrative" or Congress's intent in adding the word to § 7121(a)(1). H.R. 2970, the bill that ultimately amended § 7121(a)(1), passed the House without the term "administrative," and the word was only added later as a floor amendment in the Senate. *See* 140 Cong. Rec. 27,361 and 28,823–28 (1994). While the House subsequently adopted the Senate's amendment to the bill, *see id.*

29,350, neither the House nor the Senate provided a discussion or an explanation of the disputed term. As far as the amendments' indirect history is concerned, two National Treasury Employees Union ("NTEU") officials testified during the subcommittee hearings on H.R. 2970 that Congress should overrule *Carter* by clarifying that while negotiated grievance procedures constitute a federal employee's exclusive administrative remedy, they do not foreclose access to available judicial remedies. *See To Reauthorize the Office of Special Counsel and to Make Amendments to the Whistleblower Protection Act: Hearing on H.R. 2970 Before the Sub-Comm. on the Civil Servs. of the House Comm. on Post Office & Civil Servs.*, 103d Cong. 20–23 (1993) (statements of Tim Hannapel, Assistant Counsel in the Office of General Counsel, NTEU, and Robert M. Tobias, President, NTEU). Additionally, a House committee report accompanying a different bill, H.R. 2721, that failed to pass either the House of Representatives or the Senate stated that the addition of "administrative" to § 7121 would clarify that "[t]he grievance procedure was never intended to deprive employees of access to the courts" and thereby "correct" the decision in *Carter*. Federal Employee Fairness Act of 1994, H.R.Rep. No. 103–599, pt. 1, at 56 (1994); *see also id.* at pt. 2, at 75 (stating that the proposed addition of the word "administrative" to § 7121 would "clarify that section 7121 is not intended to limit judicial remedies otherwise provided by law.").

In the proceedings below, the Court of Federal Claims rejected Mr. Mudge's argument that the NTEU testimony and the committee report accompanying the other bill, H.R. 2721, evidenced a congressional intent to overrule *Carter v. Gibbs*. Instead, the court concluded that the absence of any demonstrated connection between the cited hearing testimony and the legis-

lative intent that Mr. Mudge sought to attribute to it reinforced the fact that the change to § 7121(a)(1) was a technical one not meant to substantively alter the law set forth in *Carter*. *See Mudge*, 50 Fed.Cl. at 505. The court also rejected Mr. Mudge's argument that the word "administrative" should be given its plain meaning, distinct from the meaning of "judicial." *Id.* at 503. Instead, the court undertook a broader approach to statutory interpretation, concluding that Mr. Mudge's construction would render § 7121(a)(2) superfluous, *id.* at 504, and disrupt "the primacy and exclusivity of the collective bargaining agreement's grievance procedure as the congressionally-preferred method for resolving employee grievances," *id.* at 505. According to the court, the 1994 addition of the word "administrative" simply clarified that the negotiated grievance procedures set forth in a federal employee's CBA constitute the employee's only avenue of redress except in those cases where § 7121 explicitly offers a choice of administrative remedies, as it does in subsections (d), (e), and (g). *Id.*

Mr. Mudge appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A.

■ The Court of Federal Claims' decision to grant the Government's motion to dismiss for lack of jurisdiction is a matter of law, which this court reviews *de novo*. *See Muniz v. United States*, 972 F.2d 1304, 1309 (Fed.Cir.1992). The underlying issue, a question of statutory interpretation, is also subject to *de novo* review on appeal. *See Strickland v. United States.*, 199 F.3d 1310, 1313 (Fed.Cir.1999).

### B.

This case is not the only one in which the Court of Federal Claims has confront-

ed the question of whether the 1994 amendments to the CSRA effectively overruled *Carter* by allowing federal employees to seek a judicial remedy for grievances that are subject to their CBA's negotiated procedures. Instead, our decision today benefits from the analysis of five other opinions in which the Court of Federal Claims has addressed precisely this issue.[3] In two of these cases, the court came to the same conclusion as in *Mudge*, holding that notwithstanding Congress's 1994 inclusion of the term "administrative," § 7121(a)(1) continues to deprive the courts of jurisdiction of grievances that fall within the scope of a CBA's negotiated procedures and therefore affirming *Carter's* on-going viability after the 1994 amendments. *See Addison–Taylor v. United States*, 51 Fed.Cl. 25 (2001); *O'Connor v. United States*, 50 Fed.Cl. 285 (2001). In the remaining three cases, however, the court came to the opposite conclusion, holding that the 1994 amendments to the CSRA overruled *Carter* by establishing a federal employee's right to bring an action in court despite the availability of a remedy under his or her CBA. *See Bailey v. United States*, 52 Fed. Cl. 105 (2002); *Abbott v. United States*, 47 Fed. Cl. 582 (2000); *Abramson v. United States*, 42 Fed. Cl. 621 (1998). Because this is a contested matter with compelling and well-reasoned arguments on both sides, we find it helpful to begin with a brief overview of the reasoning set forth in these cases.

Like Mudge, Addison–Taylor and *O'Connor* held that the 1994 addition of the word "administrative" to § 7121(a)(1) did not affect the applicability of *Carter* to plaintiffs' case. *See Addison–Taylor*, 51 Fed. Cl. at 35; *O'Connor*, 50 Fed. Cl. at 292. Thus in these two cases, the court

dismissed plaintiffs' claims for lack of jurisdiction on the ground that those claims were covered by the terms of the plaintiffs' CBAs. *Addison–Taylor*, 51 Fed. Cl. at 35; *O'Connor*, 50 Fed. Cl. at 295. Like *Mudge*, both *Addison–Taylor* and *O'Connor* rejected plaintiffs' reliance on the plain language of the statute in favor of the general congressional preference for the exclusivity of collectively bargained grievance procedures expressed in the CSRA. As the court stated in *O'Connor*, "[t]his court cannot agree that obeisance to the dictionary definition of the word 'administrative' to the exclusion of other considerations justifies departure from a legislative scheme grounded on the premise that collectively bargained grievance procedures are the preferred method of dispute resolution for unionized federal employees." 50 Fed.Cl. at 291. Similarly, the *Addison–Taylor* court held that "[t]he plaintiff's proposed reading of 'administrative' would significantly undermine [Congress's] strong preference for settling disputes through collective bargaining agreements. If Congress wishes to overturn *Carter v. Gibbs*, in other words, it would require more than a one word 'Technical and Conforming' amendment to make that clear." 51 Fed.Cl. at 34–35. In this respect, *Addison–Taylor* reiterated the *Mudge* court's unwillingness to conclude that Congress would fundamentally alter the balance of remedies set forth in the CSRA through the enactment of a technical and conforming amendment. *See Mudge*, 50 Fed.Cl. at 505. Although *O'Connor* did not focus on the technical nature of the 1994 amendments, it did find that plaintiffs' proposed interpretation of amended § 7121(a)(1) would "invert the statutory favor enjoyed

---

3. On December 20, 2001, the Court of Federal Claims stayed further proceedings in a sixth related case, *Curtis v. United States*, Fed. Cl. No. 00–93C, pending appellate review of *Mudge*.

by [employees whose grievances fall within subsections (d), (e), and (g) ]" by limiting them to a single remedy while providing non-exempted employees with both negotiated and judicial recourse. 50 Fed. Cl. at 293.

Finally, neither the *Addison–Taylor* nor the *O'Connor* court was swayed by plaintiffs' reliance on the legislative history. As did *Mudge*, Addison–Taylor and *O'Connor* both found that Congress's silence as to the intended effect of the addition of the word "administrative" to § 7121(a)(1) counseled against reading the 1994 amendments as overturning *Carter*. As the court stated in *Addison–Taylor*, "[t]he total absence of direct legislative history for the year in which the amendments did pass ... caution[s] against reading into it the drastic changes plaintiffs propose to the law as announced in *Carter v. Gibbs*." 51 Fed.Cl. at 43. *See also O'Connor*, 50 Fed. Cl. at 293 ("If Congress intended such a drastic change to the current scheme, it is inconceivable that the legislative record would not reflect some discussion or debate of that change.").

In *Bailey*, Abbott, and *Abramson*, the Court of Federal Claims came to the opposite conclusion. These three cases held that Congress effectively overruled *Carter* when it added the word "administrative" to § 7121(a)(1) and that the CSRA therefore no longer forecloses judicial review of employment grievances that are included within a CBA's negotiated grievance procedures. *See Bailey*, 52 Fed.Cl. at 107; *Abbott*, 47 Fed.Cl. at 585; *Abramson*, 42 Fed.Cl. at 631. In all three cases, the court began with the language of the statute itself, finding the plain meaning of the term "administrative" to be distinct from the word "judicial." *See Bailey*, 52 Fed. Cl. at 109; *Abbott*, 47 Fed.Cl. at 587; *Abramson*, 42 Fed.Cl. at 630. In *Abbott* and *Abramson*, this distinction led the

court to conclude that Congress limited § 7121(a)(1)'s exclusivity provision to the administrative arena when it added the word "administrative" to that subsection and that the CSRA consequently no longer bars a federal employee from seeking judicial relief in court. *See Abbott*, 47 Fed.Cl. at 587; *Abramson*, 42 Fed.Cl. at 630.

The *Bailey* court, however, concluded that the plain language of the statute did not entirely dispose of the issue. *See* 52 Fed.Cl. at 109. Instead, *Bailey* addressed the government's argument that Congress added the term "administrative" to § 7121(a)(1) simply to clarify that unless an employee is authorized to pursue one of the administrative remedies set forth in subsection (g), the negotiated grievance procedures remain the only available remedial channel. *See id.* The *Bailey* court rejected this interpretation of § 7121(a)(1) on the ground that it read the word "administrative" out of the statute. *Id.* at 110. The court also found it improbable that Congress would add clarifying language to a statute that this court had previously held to be unambiguous in *Carter*. *Id. See also Abramson*, 42 Fed.Cl. at 630 ("*Carter v. Gibbs* had already previously found the unamended text of section 7121 to be unambiguous. If it was already clear and serving its intended purpose, Congress would change it only to effect a different result.") (internal citations omitted). Additionally, the *Bailey* court rejected the government's arguments that Congress would not establish a federal employee's right to judicial review by means of a technical and conforming amendment and that plaintiffs' interpretation of the statute would render § 7121(a)(2) superfluous. *See* 52 Fed.Cl. at 112–13.

Finally, all three cases addressed the parties' reliance on the legislative history. In *Abbott* and *Abramson*, the court concluded that the legislative history was not

compelling because it failed to provide the sort of "extraordinary showing of contrary intentions" necessary to justify a departure from the unambiguous statutory language. *Abramson*, 42 Fed. Cl. at 632 (quoting *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984)); *see also Abbott*, 47 Fed. Cl. at 587. In *Bailey*, the court determined that this history was relevant inasmuch as it reinforced the plain meaning of the statute's text. *See* 52 Fed.Cl. at 110, 112.

## C.

█ We conclude that Congress's addition of the word "administrative" to § 7121(a) established a federal employee's right to seek a judicial remedy for employment grievances subject to the negotiated procedures contained in his or her CBA. To the extent that *Carter* held otherwise, the court based its decision on the language of the statute as it read prior to the 1994 amendments and that decision is therefore no longer applicable. Accordingly, we reverse the Court of Federal Claim's dismissal of Mr. Mudge's claim for lack of jurisdiction and remand for further proceedings.

As a preliminary matter, we note that our decision in *Dunklebarger v. Merit Systems Protection Board*, 130 F.3d 1476 (Fed.Cir.1997), does not dictate a different result. In both *Addison–Taylor* and *O'Connor*, the Court of Federal Claims relied on *Dunklebarger* to dismiss the plaintiffs' claims for lack of jurisdiction. *See Addison–Taylor*, 51 Fed. Cl. at 35; *O'Connor*, 50 Fed. Cl. at 292. Additionally, the government argues on appeal that *Dunklebarger* demonstrates this court's adherence to *Carter* even after the 1994 amendments to the CSRA. *Dunklebarger*, however, did not address the significance of the addition of the word "administrative" to § 7121(a)(1). Rather, it focused on the text of § 7121(a)(2) to conclude that a federal employee is generally not allowed to choose between negotiated grievance procedures and an appeal to the MSPB even when his or her CBA purports to permit such a choice. *See Dunklebarger*, 130 F.3d at 1478. As such, *Dunklebarger* is not dispositive of Mr. Mudge's appeal, which we address in detail below.

It is beyond debate that statutory interpretation begins with the language of the statute. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute.") (internal quotation omitted); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) ("The starting point of every case involving construction of a statute is the language itself."); *Weddel v. Sec'y of Dep't of Health & Human Servs.*, 23 F.3d 388, 391 (Fed. Cir.1994) ("Under the traditional rule of statutory interpretation, courts must look first to intrinsic evidence of intent (i.e., the textual language) alone."). Accordingly, we begin our inquiry with the text of the CSRA itself. Section 7121(a)(1) directs that, with a few enumerated exceptions, the negotiated grievance procedures set forth in a federal employee's CBA are to be "the exclusive *administrative* procedures for resolving grievances that fall within [the CBA's] coverage." 5 U.S.C. § 7121(a)(1) (2000) (emphasis added). Because the statute does not define the word "administrative," *see* 5 U.S.C. § 7103, we presume that Congress intended to give that term its ordinarily understood meaning, *see Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.") (internal citation omitted). In ascertaining the common mean-

ing of an undefined statutory term, the court may refer to the dictionary. *See Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1571 n. 9 (Fed.Cir.1994) ("A dictionary is an appropriate source for gleaning ... 'ordinary meaning.' "). Consulting *Black's Law Dictionary*, we find the meaning of "administrative" to be "distinguished from such [functions and acts] as are judicial." *Black's Law Dictionary* 45 (6th ed.1990); *see also Carter*, 909 F.2d at 1455 (noting the distinction between the administrative and judicial arenas). The plain language of § 7121(a)(1) as amended is therefore clear: while § 7121(a)(1) limits the administrative resolution of a federal employee's grievances to the negotiated procedures set forth in his or her CBA, the text of the statute does not restrict an employee's right to seek a judicial remedy for such grievances.

On appeal, the government urges this court to construe amended § 7121(a)(1) contrary to this clear meaning. The government makes several arguments in support of its position. First, the government argues that the actual meaning of § 7121(a)(1)'s amended text is different from that stated above. According to the government, Congress's addition of the word "administrative" to the phrase "exclusive administrative procedures" did not limit § 7121(a)(1)'s exclusivity provision to the administrative realm. Instead, the government asserts, the presence of the word "administrative" simply clarifies that unless an aggrieved employee falls within the narrowly defined class of employees covered by new subsection (g), that employee is limited to the negotiated grievance procedures set forth in his or her CBA. The Court of Federal Claims explicitly adopted this interpretation below, holding that "the word administrative does no more than make plain that the negotiated grievance procedure is the employee's only remedy, except where § 7121 explicit-

ly offers a choice of other administrative remedies." *Mudge*, 50 Fed.Cl. at 505.

As Mr. Mudge correctly responds, however, there was no need for Congress to clarify § 7121(a)(1) in this fashion. As we held in *Carter*, the unamended language of § 7121(a)(1) prior to Congress's inclusion of the term "administrative" in 1994 was "unambiguous" and clearly provided that "the [negotiated grievance] procedures set out in the collective bargaining agreement [would] be the exclusive procedures for resolving grievances which fall within its coverage." 909 F.2d at 1454 (internal citation omitted). Moreover, subsections (d) and (e), neither of which was amended in 1994, already permitted certain employees to choose between negotiated and administrative procedures in much the same way as subsection (g)'s whistleblower provisions later would. *See id.* at 1453 ("Subsections (d) and (e) give employees a choice of resolving certain specified types of disputes either through the negotiated grievance procedures or through alternative administrative ... channels."). The addition of subsection (g) therefore did not, in our view, require Congress to make any clarifying amendments to § 7121(a)(1), and the government's interpretation impermissibly reads the word "administrative" out of the subsection. In construing the CSRA as amended, this court must "give effect, if possible, to every clause and word of [the] statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting *Inhabitants of Montclair Township v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)). We consequently reject the government's construction of § 7121(a)(1) and interpret that subsection to mean what it says. Except as provided elsewhere in the statute, the negotiated grievance procedures set forth in a federal employee's CBA constitute the exclusive administra-

tive, but not judicial, procedures for resolving grievances that fall within its scope.

Second, the government argues that Congress did not intend to substantively change § 7121(a)(1) when it added the word "administrative" to that subsection because it did so via a technical and conforming amendment. Relying on the Supreme Court's decision in *Director of Revenue of Missouri v. CoBank ACB*, 531 U.S. 316, 121 S.Ct. 941, 148 L.Ed.2d 830 (2001), and echoing the Court of Federal Claim's reasoning in *Mudge*, the government argues that Congress did not intend to alter the balance of remedies set forth in the CSRA in a section entitled "Technical and Conforming Amendments." *See Mudge*, 50 Fed.Cl. at 505 (declining to "assign substantive content to a statutory term that was introduced simply as a technical amendment"). As the Supreme Court stated in *United States v. R.L.C.*, 503 U.S. 291, 305 n. 5, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992), however, "a statute is a statute, whatever its label." Moreover, the Court's decision in *CoBank* is distinguishable from the instant case. *CoBank* held that Congress did not intend to immunize certain banks from state taxation by passing a technical and conforming amendment deleting two sentences from § 2134 of the Farm Credit Act of 1933, 12 U.S.C. § 2001 *et seq. See CoBank*, 531 U.S. at 323, 121 S.Ct. 941. According to the Court, "[t]he more logical interpretation" of the amendment to § 2134 was "that Congress merely deleted language that had become superfluous." *Id.* at 324, 121 S.Ct. 941. Unlike the amendment at issue in *CoBank*, however, the 1994 amendment to § 7121(a)(1) did not involve the deletion of superfluous language but rather the affirmative addition of statutory text. Furthermore, Congress's addition of this text does not provide two "logical interpretation[s]" of the statute from which this court can choose. *Id.* Following *R.L.C.'s* example, therefore, we "appl[y] the usual tools of statutory construction" to all relevant amendments to the CSRA, regardless of their title.[4] *R.L.C.*, 503 U.S. at 305 n. 5, 112 S.Ct. 1329.

Third, the government urges us to construe § 7121(a)(1) contrary to its plain language on the ground that the legislative history surrounding the 1994 amendments does not demonstrate that Congress intended to establish a federal employee's right to seek judicial relief for grievances covered by his or her CBA by adding the word "administrative" to the phrase "exclusive procedures." According to the government, "[i]f Congress intended such a drastic change to the current scheme, it is inconceivable that the legislative record would not reflect some discussion or debate of that change" (citing *O'Connor*, 50 Fed.Cl. at 293). In this respect, the government reiterates the Court of Federal Claim's conclusion that Congress would not fundamentally alter the CSRA "without discussion, explanation, or debate." *Mudge*, 50 Fed.Cl. at 506.

The government's legislative history argument lacks merit. The government impermissibly distorts the correct approach to legislative history when it suggests that Mr. Mudge bears the burden of finding additional support therein for the plain and

4. We are also unpersuaded by arguments that Congress would not alter the CSRA's remedial scheme in an amendment directed to whistleblower protection. In this context, we note that the stated purpose of the legislation at issue here was "to authorize appropriations for the United States Office of Special Counsel, the Merit Systems Protection Board, *and for other purposes.*" United States Office of Special Counsel, Merit Systems Protection Board: Authorization, Amendment No. 2641, Pub.L. No. 103–424, 108 Stat. 4361 (1994) (emphasis added).

unambiguous language of the statute. As the Supreme Court stated in *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 592 n. 8, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), "it would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute." *See also Mansell v. Mansell*, 490 U.S. 581, 592, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("Congress is not required to build a record in the legislative history to defend its policy choices.").

To the contrary, it is the government that must show clear legislative history supporting its construction because it is the government that seeks to construe the statute contrary to its plain text. *See Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) ("[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the "plain meaning" of the statutory language."); *see also Mansell*, 490 U.S. at 592, 109 S.Ct. 2023 (holding that the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary); *Massing v. Sec'y of Dep't of Health & Human Servs.*, 926 F.2d 1133, 1135 (Fed. Cir.1991) (holding that in order to construe the statute contrary to its plain meaning, petitioner "must show clear legislative history supporting its asserted construction.") (internal citation omitted). The govern-

ment may not discharge this burden by pointing to what the legislative history does not demonstrate. Where, as here, that history fails to make the sort of "extraordinary showing" required by *Garcia*, we must construe the statute according to its plain language. *See Aaron v. SEC*, 446 U.S. 680, 695, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (holding that the plain meaning of a statute governs "[a]bsent clear and strong congressional intent to the contrary"); *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988) (holding that before the court will construe the statute contrary to its plain meaning, petitioner "must show clear legislative history supporting its asserted construction."). The plain language of amended § 7121(a)(1), which provides that the negotiated procedures contained in a CBA are to be the "exclusive *administrative* procedures for resolving grievances which fall within its coverage," does not limit a federal employee's right to avail him or herself of alternative, non-administrative avenues of redress.[5] 5 U.S.C. § 7121(a)(1) (2000).

Fourth, the government argues that we should not interpret amended § 7121(a)(1) to allow federal employees to seek a judicial remedy for claims subject to their CBA's negotiated grievance procedures because such an interpretation would render § 7121(a)(2) superfluous. The Court of Federal Claims endorsed this argument in *Mudge*, holding that "[t]o accord the term "administrative" the result that is

---

**5.** This holding is not tantamount to a determination that Mr. Mudge's own legislative history arguments are convincing. Both before the Court of Federal Claims and on appeal, Mr. Mudge relied on the testimony of various NTEU officials that Congress should add the term "administrative" to the statute in order to overrule *Carter*. This testimony was not included in any House report, however, and rather than indicating congressional intent, it merely reflects the views of a particular interest group. As the Supreme Court stated in

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), the courts "ought not attribute to Congress an official purpose based on the motives of a particular group that lobbied for or against a certain proposal." We are similarly unconvinced by Mr. Mudge's arguments concerning statements made in a House committee report accompanying a different bill, H.R. 2721. While H.R. 2721 also sought to add the word "administrative" to § 7121(a)(1), it did not pass either body of Congress.

urged [by Mr. Mudge] would render the second paragraph of § 7121(a) superfluous." 50 Fed.Cl. at 504. Section 7121(a)(2) provides that "[a]ny collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement." 5 U.S.C. § 7121(a)(2) (2000). According to both the government and the *Mudge* court, the sole function of § 7121(a)(2) is to enable a union to preserve a judicial remedy for certain types of grievances by excluding those grievances from the coverage of the negotiated procedures. *Mudge,* 50 Fed.Cl. at 504. Under this logic, § 7121(a)(2) would be "meaningless" if judicial remedies remained independently available for employee grievances that were not so excluded. *Id.*

As Mr. Mudge correctly asserts, however, exclusion under § 7121(a)(2) does not exist uniquely as a means of preserving a federal employee's right to pursue his or her grievance in court. Instead it serves two additional functions: (1) foreclosing access to negotiated procedures; and (2) directing certain matters to alternative administrative channels, such as an agency's administrative process or the Office of Personnel Management ("OPM"). *See* 5 C.F.R. § 551.703(b) (2002) (addressing "non-[negotiated grievance procedure] administrative review by agency or OPM."). As we stated in *Dunklebarger,* 130 F.3d at 1478, "[t]he decision of the agency and the union to remove particular matters from the coverage of the negotiated grievance procedures results in eliminating the employees' right to grieve such matters and leaving the employees with the sole option of appealing to the Merit Systems Protection Board." While courts should certainly avoid a construction of a statute that leaves some of its provisions superfluous, *see Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), limiting § 7121(a)(1)'s exclusivity provision to

the administrative realm in accordance with its plain language does not have this effect. Moreover, as discussed above, the government's proposed interpretation of amended § 7121(a)(1) itself risks rendering elements of the statutory language superfluous by disregarding the presence of the word "administrative" in § 7121(a)(1).

Fifth, the government argues that we should not construe amended § 7121(a)(1) according to its plain text because such a construction would disrupt the congressional preference for collectively bargained grievance procedures expressed in the CSRA. The Court of Federal Claims explicitly adopted this argument in its opinion. *See Mudge,* 50 Fed. Cl. at 505 (endorsing the government's position because, *inter alia,* "it maintains the primacy of the collective bargaining agreement's grievance procedure as the congressionally-preferred method for resolving employee grievances."). The government finds support for its policy-driven interpretation of subsection (a)(1) in *Carter,* arguing that our decision in that case "flow[ed] directly from" the CSRA's overall statutory purpose.

We agree that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the outdated patchwork of statutes and rules built up over almost a century that was the civil service system." *United States v. Fausto,* 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (internal quotation omitted). As we stated in *Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir. 1992), "the Congressionally unambiguous and unmistakable preference from exclusivity of arbitration is a central part of the comprehensive overhaul of the civil service system provided by the CSRA." We cannot agree, however, with an interpretation of § 7121(a)(1) that privileges these policy

concerns to the exclusion of the plain language of the statute. *See Artuz v. Bennett*, 531 U.S. 4, 10, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them. We hold as we do because respondent's view seems to us the only permissible interpretation of the text."). Moreover, we disagree with the government's interpretation of *Carter*. As discussed above, *Carter* based its holding on the "unambiguous" language of the pre-1994 text of § 7121(a)(1). *See Carter*, 909 F.2d at 1454. While the court subsequently addressed the general purposes animating the CSRA, *see id.* at 1455–56, it did so in order to reject appellants' argument that "an additional exception to CSRA section 7121(a)(1)'s exclusivity provision should be implied," *id.* at 1455. *Carter* therefore relied on policy considerations to reject appellants' assertion that the court should interpret unamended § 7121(a) contrary to its clear language; it did not, as the government urges us to do today, "follo[w] the overall purpose of the statutory scheme" in order to disregard subsection (a)(1)'s plain text. Following *Carter's* example, we interpret amended § 7121(a)(1) according to its unambiguous language and conclude that that subsection no longer restricts a federal employee's right to pursue an employment grievance in court.

The government makes one final argument as to why we should not construe amended § 7121(a)(1)'s exclusivity provision as limited to the administrative realm. According to the government, such a construction fundamentally disrupts the balance of procedural rights that Congress has established between employee grievances arising under subsections (d), (e), and (g) and employee grievances that fall outside the scope of those subsections. We are not convinced by this argument.

Under our interpretation of amended § 7121(a)(1), the negotiated grievance procedures remain the sole administrative avenue of redress for federal employees party to a CBA unless their grievances are of the type specifically listed in subsections (d), (e), or (g). As for the argument that this interpretation privileges employees whose claims are not covered by these subsections by allowing them to obtain both administrative *and* judicial relief, we note that the Court of Federal Claims never addressed this question and that it is not properly before us on appeal. While the issue may or may not be dispositive on remand, we explicitly do not decide whether the addition of the word "administrative" to subsection (a)(1) permits a federal employee to pursue both arbitration and a judicial remedy under § 7121(a)(1).

In interpreting § 7121 as amended, we presume that Congress was aware of any administrative or judicial interpretations of the statute. *See Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute"). We also presume that Congress intended to change the law by amending it. *See Wallace v. Jaffree*, 472 U.S. 38, 58 n. 48, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (employing the "common-sense presumption that statutes are usually enacted to change existed law."); *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1367 (1998) ("[A] change in the language of a statute is generally construed to import a change in meaning") (internal quotation omitted). Relying on the plain language of § 7121, this court in *Carter* concluded that "[t]he Civil Service Reform Act is unambiguous," *Carter v. Gibbs*, 909 F.2d 1452, 1454 (Fed.Cir.1990), and that no "additional exception to CSRA section 7121(a)(1)'s exclusivity provision should be implied," *id.* at 1455. Given

*Carter's* conclusion that § 7121(a) contained no ambiguity to be resolved, we can only interpret Congress's subsequent addition of the word "administrative" as a change in the law that limited the scope of § 7121(a)(1)'s exclusivity provision. We consequently reverse the Court of Federal Claims' decision that it lacked jurisdiction over Mr. Mudge's claim and remand for further proceedings.

### D.

As a final matter, we address the government's alternative argument that the terms of Mr. Mudge's CBA independently deprived the Court of Federal Claims of jurisdiction. Article 2, section 5 of Mr. Mudge's CBA states that, with certain exceptions not applicable here, the grievance procedures contained therein "shall be the exclusive procedure available to the Parties and the employees in the unit for resolving grievances." These procedures culminate in arbitration and, as required by § 7121(b)(1)(C)(iii) of the CSRA, section 8 of the CBA provides that "[t]he decision of the arbitrator is final and binding." [6] On appeal, the government relies on sections 5 and 8 to argue that Mr. Mudge's CBA constitutes a valid agreement to submit to binding arbitration and that Mr. Mudge has consequently waived his right to press his claim in court. As the government conceded, however, the *Mudge* court did not decide this issue, and for that reason, we decline to resolve the question on appeal.

### CONCLUSION

For the reasons set forth above, we conclude that the Court of Federal Claims erred in dismissing Mudge's complaint for lack of jurisdiction. The decision of the court is therefore

*REVERSED and REMANDED.*

No costs.

---

**6.** 5 U.S.C. § 7121(b)(1)(C)(iii) provides that "any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency." 5 U.S.C. § 7121(b)(1)(C)(iii) (2000).