[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 07, 2003
THOMAS K. KAHN
CLERK

————————————————

No. 02-13789

————————————————

D. C. Docket No. 01-01154-CV-DLG

ASOCIACION DE EMPLEADOS DEL AREA
CANALERA (ASEDAC), MARIO LOPEZ, et al.,

Plaintiffs-Appellants,

versus

PANAMA CANAL COMMISSION, THE OFFICE
OF TRANSITION ADMINISTRATION ESTABLISHED
BY THE PANAMA CANAL COMMISSION, et al.,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(May 7, 2003)**

Before BARKETT and KRAVITCH, Circuit Judges, and FULLAM[*], District Judge.

BARKETT, Circuit Judge:

The Asociacion De Empleados Del Area Canalera ("ASEDAC"), an employee association, appeals the dismissal of its complaint against the Panama Canal Commission ("PCC") for the PCC's alleged failure to provide back pay and other employment benefits as required by the Panama Canal Treaty and various United States laws. The District Court dismissed ASEDAC's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, holding that 5 U.S.C. §7121(a) barred it from exercising subject matter jurisdiction over ASEDAC's claims. Because the District Court erred in concluding that it lacked jurisdiction, we reverse the court's dismissal and remand the case for further proceedings.

## BACKGROUND

In 1903, the United States and the Republic of Panama entered into a treaty which granted the United States occupation and control of the Panama Canal Zone, a strip of land ten miles wide across the Isthmus of Panama, for the purpose of constructing the Panama Canal. See Hay-Bunau Varilla Treaty, Nov. 18, 1903, U.S.-Panama, 33 Stat. 2234, T.S. No. 431. In 1950, Congress created the Panama

---

[*]Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Canal Company to operate the Canal and continued to exercise sovereignty over the Canal and the Canal Zone until October 1, 1979, the effective date of the Panama Canal Treaty of 1977. See Panama Canal Treaty, Sept. 7, 1977, U.S.-Panama, 193 Stat. 4521, T.I.A.S. No. 10030.

Under the Panama Canal Treaty, the United States and Panama agreed to reestablish Panamanian sovereignty over the Zone but granted the United States the right to continue operating the Canal until December 31, 1999, under the Panama Canal Commission ("PCC"), a U.S. governmental agency. Id. at Art. III, ¶ 3. To implement the 1977 treaty, Congress then passed the Panama Canal Act of 1979, which, inter alia, established the PCC as a United States government corporation and set terms for PCC employment, including treating PCC personnel as federal employees and subjecting them to certain provisions of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 ("CSRA"), including 5 U.S.C. §7121(a), the provision at issue here. See 22 U.S.C. §§ 3611(a), 3641-3701.

ASEDAC, an association of former PCC employees and of specific Panamanian civilian employees of the U.S. Armed Forces at the Panama Canal Zone, appeals the dismissal of its complaint against the PCC, its successor entity the Office of Transition ("OTA"), the Secretary of the Army of the United States,

and the Secretary of the Treasury of the United States ("the Defendants"). ASEDAC claims that the PCC and OTA violated the Panama Canal Treaty and various United States laws, including the Panama Canal Act, 22 U.S.C. §3601 et seq., the Administrative Procedure Act, 5 U.S.C. §701 et seq., and the Back Pay Act, 5 U.S.C. §5596(b), by failing (1) to pay them an extra month's salary for every twelve months they worked for the PCC in accordance with Panamanian law, (2) to provide them severance pay in accordance with Panamanian and United States law, and (3) to make contributions on their behalf to the Panamanian social security system.

ASEDAC sought an order requiring the Secretary of the Army, in his capacity as a member of the PCC's supervisory board, to direct the PCC and/or the OTA to provide these benefits and requiring the Secretary of the Treasury to preserve and invest funds necessary to pay these benefits. The Defendants moved to dismiss ASEDAC's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that it was preempted by the CSRA. Specifically, the Defendants argued that the district court was barred from considering ASEDAC's claims because of 5 U.S.C. §7121(a), which, they contend, makes the grievance procedures of collective bargaining agreements the exclusive remedy for grievances falling within the CSRA's coverage.

4

The District Court dismissed ASEDAC's claims pursuant to Rule 12(b)(1), holding that §7121(a) barred it from exercising subject matter jurisdiction over those claims. The District Court first held that ASEDAC's claims for back pay and other benefits were "grievances" within the meaning of the CSRA and were subject to CSRA preemption, which it construed as a jurisdictional bar mandating dismissal under Rule 12(b)(1) rather than, as ASEDAC argued, an affirmative defense subject to avoidances such as frustration or futility. The court further rejected ASEDAC's argument that a 1994 amendment to §7121(a)(1) changed its meaning and established ASEDAC's right to seek judicial review of its claims.

On appeal, ASEDAC argues (1) that the District Court erred by failing to give meaning to the 1994 amendment to §7121(a)(1), which ASEDAC contends limits that provision's exhaustion requirement only to administrative, but not judicial, remedies, and (2) that even if §7121(a)(1) is held to preclude judicial review, ASEDAC's asserted failure to exhaust available grievance procedures as mandated by §7121(a)(1) should not be interpreted as a jurisdictional bar, but rather as an affirmative defense subject to traditional avoidances such as frustration and futility, which ASEDAC contends are applicable here.

**STANDARD OF REVIEW**

5

We review the District Court's determination of its subject matter jurisdiction de novo. See Mexiport, Inc. v. Frontier Communications Serv., Inc., 253 F.3d 573, 574 (11th Cir. 2001); Milan Express, Inc. v. Averitt Express, Inc., 208 F.3d 975, 978 (11th Cir. 2000). The underlying issue on appeal, a question of statutory interpretation, is also subject to de novo review. See United States S.E.C. v. Vittor, 323 F.3d 930, 933 (11th Cir. 2003); Estate of Shelfer v. C.I.R., 86 F.3d 1045, 1046 (11th Cir. 1996).

**DISCUSSION**

The central issue on appeal is the meaning of 5 U.S.C. §7121(a)(1), which, together with Section 7121(a)(2), reads as follows:

> (1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.
>
> (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (2000) (emphasis supplied).

6

The dispute between the parties centers on the word "administrative" in § 7121(a)(1). Prior to 1994, the statute did not contain this word. Instead, § 7121(a)(1) formerly stated that the grievance procedures set forth in a collective bargaining agreement would "be the exclusive procedures for resolving grievances which fell within its coverage." 5 U.S.C. § 7121(a)(1) (1988) (emphasis supplied).

In Carter v. Gibbs, 909 F.2d 1452 (Fed. Cir. 1990) (en banc), cert. denied, 498 U.S. 811 (1990), the Federal Circuit interpreted the pre-1994 language to preclude federal employees from resolving grievances covered by their collective bargaining agreement in court. Relying on the "unambiguous" text of unamended § 7121(a)(1), Carter held that the statute limited the resolution of such grievances to the negotiated procedures set forth in an employee's collective bargaining agreement. Carter, 909 F.2d at 1454.

However, ASEDAC contends that by adding the word "administrative" to § 7121(a)(1) in the 1994 amendment, Congress intended to overrule Carter and to establish a federal employee's right to bring an action in court despite the availability of an administrative grievance procedure. The PCC counters that the structure of the statute, the remedial scheme established by § 7121, and the central purposes of the CSRA all counsel against reading the 1994 amendment to allow federal employees to press their grievances in court when they could seek an

7

administrative remedy under their collective bargaining agreement.

The District Court relied on Carter to conclude that §7121(a)(1) bars a federal employee from bypassing the negotiated procedures contained in his or her collective bargaining agreement. However, while this appeal was pending, the Federal Circuit in Mudge v. United States, 308 F.3d 1220 (Fed Cir. 2002), overruled Carter, as well as three decisions of the Court of Federal Claims on which the District Court also relied,[1] holding that Carter was "no longer applicable" to interpreting § 7121(a)(1). Mudge, 308 F.3d at 1227. Instead, the Federal Circuit determined that by adding the word "administrative" to §7121(a)(1), Congress established a federal employee's right to bring his or her claims directly in federal court. Id.; see also O'Connor v. United States, 308 F.3d 1233, 1239-40 (Fed. Cir. 2002).

In Mudge, the Federal Circuit interpreted § 7121(a)(1) by applying the

---

[1] When the District Court dismissed ASEDAC's complaint, no federal appellate court had interpreted the meaning of the 1994 amendment to § 7121(a)(1), and six federal trial courts were evenly split on the issue. Compare Addison-Taylor v. United States, 51 Fed.Cl. 25 (2001) (holding that notwithstanding the 1994 addition of the word "administrative," §7121(a)(1) continued to prevent courts from exercising jurisdiction of grievances falling within the scope of the CSRA), Mudge v. United States, 50 Fed.Cl. 500 (2001) (same), and O'Connor v. United States, 50 Fed.Cl. 285 (2001) (same), with Bailey v. United States, 52 Fed.Cl. 105 (2002) (holding that the 1994 amendments overruled Carter by establishing a federal employee's right to bring an action in court despite the availability of a collective bargaining agreement remedy), Abbott v. United States, 47 Fed.Cl. 582 (2000) (same), and Abramson v. United States, 42 Fed.Cl. 621 (1998) (same). The District Court followed Addison-Taylor, Mudge, and O'Connor and rejected the contrary holding of Bailey, Abbott, and Abramson.

fundamental canon of statutory construction that "statutory interpretation begins with the language of the statute." Mudge, 308 F.3d at 1227. Because the CSRA does not define the word "administrative," the court first determined that Congress must have given that term its ordinary meaning, according to which "administrative" is "distinguished from such functions and acts as are judicial." Id. Accordingly, the court held that "[t]he plain language of § 7121(a)(1) as amended is therefore clear: while § 7121(a)(1) limits the administrative resolution of a federal employee's grievances to the negotiated procedures set forth in his or her [collective bargaining agreement], the text of the statute does not restrict an employee's right to seek a judicial remedy for such grievances." Id.

Having ascertained the plain meaning of § 7121(a)(1), the Federal Circuit next considered and rejected several counter-arguments to its interpretation of § 7121(a)(1) identical to those advanced by the PCC here. First, the court considered whether the 1994 amendment was intended merely to clarify "that unless an aggrieved employee falls within the narrowly defined class of employees covered by new subsection (g), that employee is limited to the negotiated grievance procedures set forth in his or her [collective bargaining agreement]."[2] Id. at 1228.

---

[2] In 1994, in addition to adding the word "administrative" to § 7121(a)(1), Congress amended the CSRA by adding subsection (g) to § 7121, which gives "whistleblowers" the choice of resolving their employment grievances through either the negotiated procedures contained in their collective bargaining agreement or through certain administrative avenues enumerated in §

9

The court determined that "there was no need for Congress to clarify § 7121(a)(1) in this fashion . . . [because] subsections (d) and (e), neither of which was amended in 1994, already permitted certain employees to choose between negotiated and administrative procedures in much the same way as subsection (g)'s whistleblower provisions later would." Id.

Second, the court considered the government's argument that Congress did not intend to substantively change § 7121(a)(1) when it added the word "administrative" to that subsection because it did so by means of a "Technical and Conforming Amendment." The court found that the "technical and conforming" label was not dispositive and could not supplant the plain and unambiguous language of the amended statute. Id. at 1229.[3]

_____

7121(g). See 5 U.S.C. § 7121(g) (2000). Concurrent with the creation of subsection (g), Congress also made an additional change to subsection (a)(1) by amending § 7121(a)(1) to refer to subsection (g) so that § 7121(a)(1)'s exclusivity provision now applies "[e]xcept as provided in subsections (d), (e), and (g)." 5 U.S.C. § 7121(a)(1) (2000) (emphasis supplied).

[3] In the case at bar, the PCC contends that technical and conforming amendments "do not make substantive changes in the law." Brief for Appellees, at 16. However, as Harris v. PPG Industries, Inc., 446 U.S. 578 (1980), and Director of Revenue of Missouri v. CoBank ACB, 531 U.S. 316 (2001), illustrate, this argument is untenable. In Harris, the Supreme Court interpreted a technical and conforming amendment to the Clean Air Act, 42 U.S.C. §7607, which added the phrase "and any other final action of the Administrator" to a list of certain enumerated actions by the Administrator that §7607 made reviewable in federal courts of appeal. The defendant argued that the Administrator's decision regarding applicability of the EPA's "new source" performance standards was not reviewable, in part because the catch-all "any other" language had been added only by a technical and conforming amendment and thus could not substantively expand judicial remedies. The Supreme Court rejected this argument because it "discern[ed] no uncertainty in the meaning of the phrase 'any other final action.'" 466 U.S. at 588. Likewise, in CoBank, the PCC's principal authority, the Court made plain its willingness to read a technical and conforming amendment as making a substantive change in the law in appropriate circumstances.

Third, the court considered the government's contention that the legislative history surrounding the 1994 amendments did not demonstrate that Congress intended to establish a federal employee's right to seek judicial relief for grievances covered by his or her collective bargaining agreement. The court found that this argument "lack[ed] merit" because it impermissibly shifted the burden of finding additional support in legislative history to plaintiffs despite the plain language of the statute. Id. at 1229-30 ("[I]t is the government that must show clear legislative history supporting its construction because it is the government that seeks to construe the statute contrary to its plain text. The government may not discharge this burden by pointing to what the legislative history does not demonstrate.").

Fourth, the court considered whether its interpretation of § 7121(a)(1) would render § 7121(a)(2) "superfluous" because the "the sole function of § 7121(a)(2) is to enable a union to preserve a judicial remedy for certain types of grievances by excluding those grievances from the coverage of the negotiated procedures" and this exclusion would be pointless "if judicial remedies remained independently

---

See 531 U.S. at 324 ("Had Congress simply deleted the final sentence of §2134 that limited the exemption while retaining the sentence granting the exemption, we would have no trouble concluding that Congress had eliminated the States' ability to tax banks for cooperatives."). In short, the PCC's generalization that technical and conforming amendments never make substantive changes in the law is simply unwarranted.

11

available for employee grievances that were not so excluded." Id. at 1231.   The

court rejected this suggestion, observing that § 7121(a)(2) "does not exist uniquely

as a means of preserving a federal employee's right to pursue his or her grievance

in court" but achieves two further objectives: "(1) foreclosing access to negotiated

procedures; and (2) directing certain matters to alternative administrative channels,

such as an agency's administrative process or the Office of Personnel

Management." Id.

Finally, the court considered whether construing amended § 7121(a)(1)

according to its plain text "would disrupt the congressional preference for

collectively bargained grievance procedures expressed in the CSRA." Id. The

court rejected this suggestion as well, noting that policy considerations like this

must give way to the statute's plain language:

> The government finds support for its policy-driven interpretation of
> subsection (a)(1) in Carter, arguing that our decision in that case flowed
> directly from the CSRA's overall statutory purpose. We agree that a leading
> purpose of the CSRA was to replace the haphazard arrangements for
> administrative and judicial review of personnel action, part of the outdated
> patchwork of statutes and rules built up over almost a century that was the
> civil service system. We cannot agree, however, with an interpretation of §
> 7121(a)(1) that privileges these policy concerns to the exclusion of the plain
> language of the statute. Moreover, we disagree with the government's
> interpretation of Carter. As discussed above, Carter based its holding on the
> unambiguous language of the pre-1994 text of § 7121(a)(1). While the court
> subsequently addressed the general purposes animating the CSRA, it did so
> in order to reject appellants' argument that an additional exception to CSRA
> section 7121(a)(1)'s exclusivity provision should be implied. Carter

12

therefore relied on policy considerations to reject appellants' assertion that the court should interpret unamended § 7121(a) contrary to its clear language; it did not, as the government urges us to do today, follow the overall purpose of the statutory scheme in order to disregard subsection (a)(1)'s plain text. Following Carter's example, we interpret amended § 7121(a)(1) according to its unambiguous language and conclude that that subsection no longer restricts a federal employee's right to pursue an employment grievance in court.

Id. at 1228-32 (internal citations and quotations omitted).

We find the Federal Circuit's reasoning in Mudge on all these points to be persuasive and adopt that reasoning here. We hold that Congress' addition of the word "administrative" to § 7121(a)(1) established a federal employee's right to seek a judicial remedy for employment grievances subject to the negotiated grievance procedures contained in his or her collective bargaining agreement. Accordingly, we reverse the District Court's dismissal of ASEDAC's claim for lack of subject matter jurisdiction and remand the case for further proceedings.

## CONCLUSION

For the foregoing reasons, we conclude that the District Court erred in dismissing ASEDAC's complaint for lack of jurisdiction. We therefore REVERSE the District Court order granting PCC's motion to dismiss and REMAND the case for further proceedings consistent with this opinion.

13